LAURIE A. TRAKTMAN (SBN 165588)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
Email: lat@gslaw.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF SHEET METAL WORKERS' PENSION PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SHEET METAL WORKERS' HEALTH PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA SHEET METAL JOINT APPRENTICESHIP AND TRAINING COMMITTEE; BOARD OF TRUSTEES OF SHEET METAL WORKERS LOCAL 105 RETIREES' SUPPLEMENTAL HEALTH CARE TRUST FUND; BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA SHEET METAL WORKERS' 401(A) PLAN; INTERNATIONAL ASSOCIATION OF SHEET METAL AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL UNION NO. 105 UNION DUES CHECK-OFF AND DEFERRED SAVINGS FUND; BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA LABOR MANAGEMENT COOPERATION TRUST; BOARD OF TRUSTEES OF SHEET METAL AND AIR CONDITIONING CONTRACTORS NATIONAL ASSOCIATION OF SOUTHERN CALIFORNIA;  and BOARD OF TRUSTEES OF SHEET METAL WORKERS LOCAL 105 HEALTH REIMBURSEMENT PLAN, <br><br>      Plaintiffs, <br><br>        v. <br><br> WESTLAND HEATING AND AIR CONDITIONING, INC.; KIM HELTON; AND LISA ANN HELTON; individuals, <br><br>      Defendants. | Case No.  5:19-cv-01170 <br><br> COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT; BREACH OF TRUST AGREEMENTS; VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); AND PIERCING THE CORPORATE VEIL FOR INDIVIDUAL LIABILITY |

     Plaintiffs, Board of Trustees of Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada ("Pension Plan"); Board of Trustees of Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada ("Health Plan"); Board of Trustees of Southern California Sheet Metal

Joint Apprenticeship and Training Committee ("JATC"); Board of Trustees of Sheet Metal Workers Local 105 Retirees' Supplemental Health Care Trust Fund ("Retirees Plan"); Board of Trustees of Southern California Sheet Metal Workers' 401(a) Plan ("401(a) Plan"); International Association of Sheet Metal Air, Rail and Transportation Workers, Local Union No. 105 Union Dues Check-Off and Deferred Savings Fund ("Dues and Savings Fund"); Board of Trustees of Southern California Labor Management Cooperation Trust ("LMCT"); and Board of Trustees of the Sheet Metal and Air Conditioning Contractors National Association of Southern California  ("Industry Fund");  and Board of Trustees of Sheet Metal Workers Local 105 Health Reimbursement Plan ("HRA")  (collectively referred to as the "Plans"), aver as follows:

## JURISDICTION

1. Jurisdiction in this Court is based on the exclusive jurisdiction of the District Courts to hear civil actions brought by a fiduciary pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, to redress violations or enforce the terms of ERISA or a multiemployer plan governed by Section 502(e) of ERISA, 29 U.S.C. § 1132(e).   Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. Jurisdiction is also based on the jurisdiction of the District Courts to hear suits for violations of contracts between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, as provided in Section 301(a) of the Labor Management Relations Act, 1947, as amended ("LMRA"), 29 U.S.C. § 185(a).

3. Venue is proper in this District Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the district in which certain of the Plans are administered, the signatory local unions maintain their offices, and the acts mentioned below took place.

## PARTIES

### Plaintiffs

4. With the exception of the JATC, Dues and Savings Fund, LMCT, and Industry Fund, at all times mentioned in this complaint, the Plans have been jointly trusteed, labor-management trust funds created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  At all times

mentioned in this complaint, the JATC has been a pooled trust fund created and maintained pursuant to Section 302(c)(7) of the LMRA, 29 U.S.C. § 186(c)(7).  At all times mentioned in this complaint, the Dues and Savings Fund has been a pooled trust fund created and maintained pursuant to Section 302(c)(4) of the LMRA, 29 U.S.C. § 186(c)(4).  At all times mentioned in this complaint, the LMCT and Industry Fund have been employer-trusteed trust funds established pursuant to Section 501(c)(6) of the Internal Revenue Code, 26 U.S.C. § 501(c)(6).

5.   The Pension Plan and 401(a) Plan are "employee pension benefit plans" and "multiemployer plans" as defined in Section 3(2)(A) and 3(37) of ERISA, 29 U.S.C. § 1002(2)(A) and (37)(A).  The Health Plan, JATC, and Retirees Fund are "employee welfare benefit plans" and "multiemployer plans" as defined in Section 3(1) and 3(37) of ERISA, 29 U.S.C. § 1002(1) and (37)(A).

6.   The Plans were created pursuant to separate agreements and declarations of trust ("Trust Agreements") executed and maintained pursuant to collective bargaining agreements between various employer associations and individual contractors located in the Southern California, Arizona and Nevada areas performing work in the sheet metal industry, an industry affecting commerce, and various local unions of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART").  As described more fully below, the Plans are funded by contributions from employers who are signatory to the collective bargaining agreements.

7.   The administrative offices of the Pension Plan and the Health Plan are located at 111 North Sepulveda Boulevard, Suite 100, Manhattan Beach, California.  The administrative offices of the Retirees Plan and the 401(a) Plan are located at 10 Almaden Boulevard, Suite 540, San Jose, California.  The administrative offices of the JATC, Dues and Savings Fund, and HRA are located at 2120 Auto Centre Drive, Suite 105, Glendora, California.  The administrative offices of the LMCT and Industry Fund are located at 12070 Telegraph Road, Suite 350, Santa Fe Springs, California.

<u>Defendants</u>

8.   Defendant WESTLAND HEATING AND AIR CONDITIONING, INC. (the "Company") is a corporation organized and existing under the laws of the State of California, and licensed as a warm-air heating, ventilating and air-conditioning, and air and water balancing contractor by the State of California.  At all times mentioned herein, the Company has been doing business at 5820 Central

Avenue, Unit 200, Riverside, CA 92504.

9.     The Company is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.  The Company is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

10.    Defendants KIM HELTON, and LISA ANN HELTON (collectively "Individual Defendants") are the officers, directors, controlling shareholders, and beneficial owners of the Company.

11.    The Individual Defendants are responsible for running the day-to-day operations of the Company and are responsible for all decisions pertaining to the payment of contributions to the Plans, including decisions whether or not to pay such contributions.

12.    Some or all of the Individual Defendants are owner-employees who were eligible to obtain benefits from the Plan under the Trust Agreements.

13.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants acted on behalf of and in the interest of the Company in all aspects of labor relations and in its dealings and relations with the Plans, including but not limited to determining which employees the Company would report to the Plans, the number of hours upon which contributions would be reported as owing, and the amount of owed contributions that would be paid.  The Individual Defendants authorized and made payments of employee benefit plan contributions from the Company to the Plans.

14.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Company has failed to hold regular board meetings.

15.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Company has never kept minutes of board meetings or executive meetings that were held.

16.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Company failed to maintain assets adequate to operate its business and pay its debts as they matured, including its obligations to contribute to the Plans described below.

17.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants transferred money between the Company's accounts and their personal accounts without keeping complete transaction records.

18.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants transferred money between the Company's accounts and their personal accounts without promissory notes, written loan agreements, or records of a debt obligation.

19.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Company did not issue shares of stock.

20.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants used Company assets for personal purposes.

21.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants made decisions in the absence of a meeting of the Company's board.

22.     The Plans are informed and believe, and on the basis of such information and belief aver, that some or all of the Individual Defendants guaranteed the Company's liabilities in their individual capacities.

23.     The Plans are informed and believe, and on the basis of such information and belief aver, that at all relevant times the Individual Defendants have been the qualifying individuals for state licensing and bond purposes, and the responsible managing officers for the Company.

24.     The Individual Defendants were the partners, joint venturers, employers, employees, actual and ostensible agents, and representatives of same and, in doing the acts alleged, were acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

## THE OBLIGATION TO CONTRIBUTE

25.     The Company entered into, executed, and at all material times has been party to a written collective bargaining agreement (the "Bargaining Agreement") with SMART Local Union No. 105 ("Local 105").  The Bargaining Agreement establishes and renews the Trust Agreements.  The Plans have at all times been intended third party beneficiaries of the Bargaining Agreement.

26.     Under the Bargaining Agreement and Trust Agreements, an employer's monthly

contributions to the Pension Plan, Health Plan, JATC, Retirees Fund, 401(a), Dues Fund, and Industry Fund are separately calculated by determining the total number of hours worked by the employer's employees in the reporting month, and multiplying these total hours by the prescribed hourly contribution rates set forth in the Bargaining Agreement.  Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Dues and Savings are established as a deduction from wages.  Additionally, beginning August 1, 1990, under the Bargaining Agreement and Trust Agreements, the employers make additional contributions to the 401(a) Plan, both as based on an hourly contribution rate specified in the Bargaining Agreement and from deductions from employee wages pursuant to, and in amounts specified in, wage deduction agreements signed by the employers' employees.

27.    The Bargaining Agreement and Trust Agreements obligate an employer to file monthly remittance reports with the Plans and to pay the Plans the contributions set forth in such reports by the tenth day of the month following the month in which such contributions were earned by the employees' labor.  The Bargaining Agreement and Trust Agreements provide that contributions are delinquent if not paid by the twentieth day of such latter month.  The Company and the Individual Defendants are fully aware of the obligation to timely pay contributions.

28.    Because contributing employers themselves calculate and prepare the monthly reports, the Plans must rely upon the honesty of employers and their accuracy in reporting the hours worked and contributions owed on behalf of their covered employees.  To verify the accuracy of the reports, the Plans have at all times maintained an employer compliance examination program pursuant to the Trust Agreements.  As a part of this compliance examination program, the Plans' compliance examiners periodically examine the books and payroll records of contributing employers.  If a compliance examination reveals that an employer owes contributions to the Plans in excess of the amounts contained in the monthly remittance reports submitted to the Plans, the Plans assess an hourly compliance examination fee, together with other assessments described herein.

29.    The Bargaining Agreement and Trust Agreements provide that if an employer fails to furnish remittance reports on a timely basis, it shall pay the Fund $200 per plan or ten percent of the delinquent contributions, whichever is greater, as a late filing assessment.  In addition, the Bargaining Agreement and Trust Agreements provide that if contributions to the Plans are delinquent, the employer

will pay liquidated damages in the amounts of ten percent of the delinquent amount for the first month, and five percent of the delinquent amount for each month thereafter in which the contributions remain delinquent.

30.     The Bargaining Agreement and Trust Agreements provide that an employer will be liable to the Plans for any costs incurred in, or relating to, the collection of any contributions, liquidated damages or late filing assessments due to the Plans, including interest and attorney's fees.

31.     The Bargaining Agreement and Trust Agreements provide that in the event an employer is delinquent in the payment of contributions or liquidated damages to the Plans for a period of fifteen days or more, then such employer shall, upon written notice, be required to furnish to the Plans or their representative all records and other information deemed necessary by the Plans to enable them to file mechanic's liens, stop notices or Miller Act claims on behalf of the affected employees pursuant to applicable state law, in order to collect unpaid compensation owing by the employer.  The required information includes identification of each project for which the employer supplied labor or materials, and the number of hours worked by the employer's employees at each job during the months in which the employer was delinquent.  The Trust Agreements further provide that the Plans may require the employer to submit this information to the Plans or their representative on a weekly basis while the employer remains delinquent.  The Trust Agreements also acknowledge that the parties recognize that time is of the essence in the filing of the mechanic's liens, stop notices or Miller Act claims and that the employer shall therefore supply such information immediately upon request by the Plans.  The Bargaining Agreement further provides that any failure to provide such information by Individual Defendants subjects the officers, directors, and shareholders to individual liability.

32.     The Plans have a collection policy in which it states that unpaid contributions are vested assets of the Trust Fund on the day they become due or delinquent.

**THE EMPLOYER'S DELINQUENCIES**

33.     The Company has failed and refused to remit contributions to the Plans for the months of February 2019 through May 2019, and continuing through the date of this complaint.  The Company is therefore delinquent in its obligations to the Plans for such months in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $314,733.11

.

34.     The Company owes liquidated damages for the late payment of contributions for the work months of February 2019 through May 2019, and continuing through the present in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $62,946.62.

35.     The Bargaining Agreement provides for interest to be paid on all delinquent contributions, calculated at the rate of twelve percent (12%) per annum.

36.     The Company owes interest for the delinquent months of February 2019 through May 2019, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $31,473.31.

37.     The Company was timely notified by letter of these delinquencies and it was assessed liquidated damages, and payment of the delinquent contributions and liquidated damages was repeatedly demanded.  These letters also demanded mechanic's lien, stop notice and Miller Act claim information.  To date, the Company has failed and refused to pay the contributions and other sums owing to the Plans and has refused to furnish mechanic's lien, stop notice and Miller Act claim information.

38.     The Company is fully aware of the obligation to make contributions on behalf of covered work performed by the Company's employees and the obligation to submit accurate remittance reports, as set forth herein, and is equally aware of its failure to make such contributions.

## FIRST CAUSE OF ACTION:

## AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES

## FOR BREACH OF BARGAINING AGREEMENT

39.     The Plans reaver every averment of paragraphs 1 through 38 above as if they were repeated here in full.

40.     Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Bargaining Agreement.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

41.     Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Bargaining Agreement.  As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

42.     The Plans are informed and believe, and based upon such information and belief aver, that additional delinquencies have occurred both before and after the date of this complaint, and that such delinquencies are continuing.  As a direct result, Defendants have become and will become indebted to the Plans for additional contributions and other sums in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

43.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement.  Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

## SECOND CAUSE OF ACTION:

### AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF
### AND DAMAGES FOR BREACH OF TRUST AGREEMENTS

44.     The Plans reaver every averment of paragraphs 1 through 43 above as if they were repeated here in full.

45.     Defendants' failure to pay such contributions and other sums on the dates on which such

contributions and other sums were due are violations of the Trust Agreements.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

46. Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Trust Agreements.  As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

47. The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement.  Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

### THIRD CAUSE OF ACTION:

### AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF

### AND DAMAGES FOR VIOLATION OF ERISA

48. The Plans reaver every averment of paragraphs 1 through 47 above as if they were repeated here in full.

49. By engaging in the acts described above, Defendants have violated the terms of the Plans, and thereby have violated certain provisions of ERISA including Section 515, 29 U.S.C. § 1145.  As a

direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

50.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement.  Unless the Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

51.     Because Defendants acted with malice, oppression and conscious disregard of the rights of the Plans, the Plans are entitled to an award of punitive damages as an appropriate legal remedy available under Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E), in an amount deemed appropriate by the Court.

**FOURTH CAUSE OF ACTION:**

**INDIVIDUAL DEFENDANTS ARE LIABLE FOR THE COMPANY'S UNPAID**

**CONTRIBUTIONS AND ATTENDANT DAMAGES ("PIERCING THE CORPORATE VEIL")**

52.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 above as if set forth in full.

53.     The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendants knew that some or all of them would be granted benefits under the Trust Agreements.

54.     The Plans are informed and believe, and on the basis of such information and belief, aver,

that by signing the Bargaining Agreement, the Company became eligible for some contracts and economic opportunities that it would not otherwise have been permitted to bid on.

55.    The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement, the Individual Defendants knew that it would give the Company access to new contracts and economic opportunities.

56.    The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendants knew that the Company could not afford to make the contributions required by the Bargaining Agreement and Trust Agreements.

57.    The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendants knew that the Company's employees.

58.    The Plans are informed and believe, and on the basis of such information and belief, aver, that at relevant times the Company lacked the income or capital to meet its obligation to contribute under the Bargaining Agreement and Trust Agreements.

59.    Upon entering into the Bargaining Agreement, the Company's obligation to contribute was foreseeable and could reasonably be expected to arise within the course of its business.

60.    The Trust Agreements obligate the Pension Plan to provide benefits to vested employees whether or not their employer makes contributions as required.

61.    A company's "corporate veil" should be pierced and its shareholders held personally liable for the company's debts if (1) they failed to respect the corporate form; (2) limitation of shareholder liability would visit injustice upon the litigants; and (3) the shareholders either had fraudulent intent when they incorporated the company, or they engaged in a deliberate misuse of the corporate form.

62.    The Individual Defendants' previously-alleged conduct, including but not limited to their failure to hold regular corporate meetings, their failure to keep minutes of meetings, their failure to retain enough capital to meet regular and foreseeable contributions, their failure to keep complete records of monetary transfers between personal and Company accounts, their treating of Company assets as their own, their failure to issue Company stock, their decision making in the absence of a Company board meeting,

and their personally guaranteeing Company debts, constitutes sufficient disregard of the corporate form to hold them individually liable.

63.     The Individual Defendants' previously-alleged conduct, including but not limited to their knowledge that the Company could not afford its obligations under the Bargaining Agreement, their knowledge that by entering the Company into the Bargaining Agreement at least one Individual Defendant would personally and individually be entitled to benefits from the Plan, their knowledge that by signing the Bargaining Agreement, the Company would gain access to new economic opportunities and contracts, and their failure to maintain adequate capitalization to meet their contribution obligations while continuing to submit remittance reports, constitutes sufficient misuse of the corporate form to justify holding the Individual Defendants personally liable.

64.     The fact that the Individual Defendants knew that at least one Individual Defendant would personally benefit from the Plan's assets even if the Company never meets its contribution obligations to the Plan, that the Company was incapable of meeting its obligations when it entered into the Bargaining Agreement, that the Company was unable to meet debts that were reasonably foreseeable in the normal course of business, and that the Individual Defendants knew this constitute sufficient injustice to justify holding the Individual Defendants personally liable.

65.     At all times material herein, the Individual Defendants were the partners, joint venturers, employers, employees, actual and ostensible agents, and representatives of same and, in doing the acts alleged, was acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

66.     For the reasons stated above, the Individual Defendants cannot take advantage of the corporate form's limit on liability and are, therefore, personally liable for all amounts owed to the Plans.

**PLAINTIFFS THEREFORE PRAY JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:**

As to All Causes of Action:

1.     That the Court restrain and enjoin Defendants, for so long as they remain contractually and

legally bound to make payments of contributions to the Plans, from failing or refusing:

       (1)     to make payments of contributions to the Plans on the dates on which they fall due;

       (2)     to submit to the Plans any remittance reports required from contributing employers on the dates on which they fall due; and,

       (3)     to submit to the Plans any and all information deemed necessary by the Plans to enable Defendants' employees or their representative(s) to file mechanic's liens, stop notices and Miller Act claims.

2.     For payment of delinquent contributions from Defendants for all months that Defendants are delinquent at the time of trial, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $409,153.04.

3.     For payment of liquidated damages from Defendants at the time of trial, an amount presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $62,946.62.

4.     For reasonable attorney's fees and costs of suit from Defendants.

5.     For prejudgment interest pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and post-judgment interest in accordance with the Bargaining Agreement, the Trust Agreements and law, an amount presently estimated to be in an amount presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $31,473.31.

As to Causes of Action 3 and 4 Only:

1.     For payment of punitive damages from the Defendants in an amount deemed appropriate by this Court.

As to Causes of Action 4 Only:

1.     For payment from the Individual Defendants of actual damages presently estimated to be in excess of $409,153.04.

2.     For prejudgment and post-judgment interest in accordance with applicable law; an amount presently estimated to be in an amount presently unknown to the Plans, but which will be established by the Plans at the time of trial.

///

///

<u>As to All Causes of Action:</u>

1.      For such other and further relief as to this Court may seem just and proper.


Dated:  June 25, 2019                          Respectfully submitted,

                                               **GILBERT & SACKMAN**
                                               A Law Corporation


                                               By: _____
                                                   Laurie A. Traktman
                                                   Attorneys for Plaintiffs